Wright, J.
A motion for rehearing has been made in-this cause, upon the ground that the original decision was in conflict with the holding of the Supreme Court; and although motions of this kind are ordinarily disposed of without explanatory remark, the ground assumed by counsel is of that gravity that we set forth our reasons for refusing the motion.
The original action was by Elesher, a creditor of “ The Southwestern Transportation and Wharf-boat Company,” against Gaff' and others, who had subscribed to the stock of that corporation. Gaff>& Co. assigned their subscription (though perhaps this assignment was colorable), and notified the company that they would not be liable for debts thereafter contracted. Subsequently the debt toElesher was created, and he now seeks to make Gaff & Co. liable on their subscription. In 1873, a proceeding in quo’ warranto was instituted against McCoy and others, who-were assuming to act as “ The Southwestern Transportation and Wharf-boat Company,” and judgment of ouster was rendered December 11, 1873, which was after the liability to Elesher had arisen.
In the present action, the defense by Gaff and others-was’, that this corporation, to the stock of which they had subscribed, never was a corporation at all and never could be. The certificate of its organization stated, “ 3. The business of said company shall be the building, repairing,, and maintaining of wharf-boats, at Cincinnati, Ohio, and ■other points.” This certificate was supposed to be under *455 the law (66 Ohio L. 125, probably repealed by 67 Ohio L. 57), which authorizes “building and repairing steamboats and other water-craft, . . . carrying on business usually connected with the main object of the corporation aforesaid.” Gaff’s defense claimed that a wharf-boat -was not a •water-craft, and could not be comprehended within the terms of this law, and there being no legal authority to authorize a wharf-boat company to incorporate, this certificate was null and void, and there never was any such legal entity as “ The Southwestern Transportation aud Wharf-boat Company.” From this it follows that the subscription of Gaff & Co., to the corpoi’ation, was null and void, and they could not be held thereon.
This defense, it will be observed, depends upon the proposition that a wharf-boat was not a water-craft, and this is maintained by counsel for Gaff & Co., and they insist, with great earnestness, that the Supreme Court have so decided. If it were so, we of course would consider the question settled; but it remains to be seen whether such effect is to be given to the action of that tribunal.
No opinion was pronounced, as far as we are aware, by the Supreme court, in the quo warranto proceeding, and we gather, from the record, what the legal conclusions in the matter were. The statute, it will be remembered, authorized corporations for the “building and repairing steamboats and other water-craft.” This is all. The certificate of incorporation is, not simply for “ building and repairing,” which is all the statute allows, but it is for “ building, repairing, and maintaining of wharf-boats, at Cincinnati and other points.” This certificate, therefore, seems to comprehend, not only that which the statute provides for, but something more; and while it might be valid, to the extent of statutory power, it might be invalid as to the excess.
When we read, in the law, that these organizations may be created for the purpose of “building and repairing vessels,” we at once understand that such means and appliances may be resorted to as shipyards, dockyards, marine *456 ways, etc., the object of which, in the first place, is, out of wood and iron, to construct boats, vessels, and that kind of craft, as one would build a house out of new material. In the second place, the object is to put' in order those which have become dilapidated. Perhaps it is a vain labor to attempt, by explanation, to make obvious the meaning of the words “ build and repair.”
Knowing, then, the extent of corporate power comprehended within these words of the statute, parties incorporate for the purpose of “ building, repairing, and maintaining of wharf-boats, at Cincinnati and other points.” Is not here, manifestly, more than is in the statute; that says nothing about “ maintaining.” The idea involved in the word “ maintaining” is not only not comprehended in, but is inconsistent with, the words “build and repair.” The one who “ builds,” under this statute, does not build for himself to keep, but passes the vessel over, when completed, into the hands of one who is subsequently to “ maintain” her; so, when the vessel has been repaired, it again goes to the hands of him who owns, and therefore “ maintains ” her. Building and repairing relate to getting the vessel ready for use; maintaining applies to that series of operations that involve and constitute the use. And when we see that the certificate speaks not only of “ maintaining,” but of “maintaining wharf-boats, at Cincinnati and other points,” it still further impresses the idea that it is the use of the wharf-boats, at different points, that is sought to be authorized, in addition, simply, to building and repairing them.
The law, then, having authorized the “ building and repairing” of vessels, simply, in the quo warranto proceeding, and it appearing that the certificate of incorporation of “ The Southwestern Transportation and "Wharf-boat Company” authorized the “ building, repairing, and maintaining of wharf-boats, at Cincinnati and other points,” might not the Supreme Court, upon such a case, well say: Under the law, while defendants might have the power to build and repair wharf-boats, they have no right to main *457 tain wharf-boats, at Cincinnati and other points, if by the word maintaining, as used in their certificate, they have been, and are, carrying on a business entirely different or distinct from that of building and repairing water-craft. And this is exactly w7hat the corporation was doing. The information says that the party are assuming to act as a corporation, and “to build, repair, and maintain wharf-boats, at Cincinnati and other points; to buy and own a wharf-boat; to use such wharf-boat, moored in the Ohio river, at the Cincinnati wharf, in carrying on the business of receiving, storing, and delivering general merchandise or freight, for reward.”
The agreed statement of facts, after setting forth the certificate of incorporation, proceeds to say that defendants organized thereunder; that they elected directors, caused to be built a wharf-boat; aud in describing the business they engaged in carrying on, it is not said that they were following the line of building and repairing water-craft, or any thing else, but all that is said on the subject, is that they “ carried on business, as a corporation, in receiving, storing, and delivering freight, at Cincinnati.” This is the only thing the corporation ever did, according to this record. Thereupon defendants were ousted from being “ such corporation.” That is, as we understand it, from being a corporation engaged in the business of “ receiving, storing, and delivering freight- at Cincinnati.”
How could it have been necessary to this decision to have held that a wharf-boat was not a w7ater-craft ?
If these proceedings had shown, in the information, certificate, and agreed statement of facts, that the defendants were incorporated for, and were doing nothing but, building and repairing wharf-boats, and then the Supreme Court had ousted them from being “ such corporation,” it might, perhaps, well be argued that the ground of the decision was, because it only could be, that a wharf-boat was not a water-craft, within the meaning of the law. ■ But when they are exceeding their lawful authority, how does an *458 ouster show that they never had lawful authority for anything ?
Before the proceeding above spoken of, an information had been filed against the corporation itself, to oust them of privileges it was claimed they were exercising. The case is reported (28 Ohio St. 166), and we think the opinion, in that ease, still further illustrates the views herein expressed. The court say, that the law in question “ does not confer upon the corporation, so organized, any of the following liberties, privileges, and franchises, to wit:
“ 1. That of having and exercising the right to purchase, own, or use a wharf-boat, for the purpose of receiving, storing, and forwarding or delivering general merchandise or freight.
“ 2. That of carrying on the business of receiving, on said wharf-boat, general merchandise or freight, from any steamboat or steamboats, or from any shipper or shippers; of storing such merchandise or freight on said wharf-boat, and of forwarding or delivering the same to any boat or boats, as aforesaid, or to any consignee, charging a compensation therefor. Judgment of ouster as to said liberties.”
But does this decision say that the law does not authorize a corporation for the building or repairing of wharf-boats ? We do not see how that question is at all involved in the case. The Supreme Court did say that, under this law, a company could not carry on the business of warehousemen, and, as we understand it, this is all that was said.
We fail, therefore, to see the conflict which is said to exist, because we do not see that in either of the quo warranto proceedings it was necessary for the Supreme Court, in reaching the conclusion they did, to hold that a wharf-boat was not a water-craft, or that they, in fact, did so hold.
It is proper'to observe, that the matters herein discussed were fully considered upon the original hearing.

Motion overruled.